```
                                              FILED
                                    CLERK, U.S. DISTRICT COURT

                                    11/18/2022

                                    CENTRAL DISTRICT OF CALIFORNIA
                                    BY: ____EC____ DEPUTY
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2022 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>          v.<br><br>CHRISTOPHER HAMPTON,<br>  aka "Narco710,"<br>  aka "Narco310,"<br><br>          Defendant. | CR 2:22-cr-00549-MCS<br><br>I N D I C T M E N T<br><br>[21 U.S.C. § 846: Conspiracy to Distribute and to Possess with Intent to Distribute Fentanyl and Methamphetamine; 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vi), (b)(1)(A)(viii), (b)(1)(B)(viii), (b)(1)(C): Distribution and Possession with Intent to Distribute Fentanyl and Methamphetamine; 21 U.S.C. § 856(a)(1): Maintaining a Drug-Involved Premises; 18 U.S.C. § 924(c)(1)(A)(i): Possession of a Firearm in Furtherance of Drug Trafficking Crimes; 21 U.S.C. § 853, 18 U.S.C. § 924, 28 U.S.C. § 2461(c), 26 U.S.C. § 5872: Criminal Forfeiture] |

     The Grand Jury charges:

COUNT ONE

[21 U.S.C. § 846]

A.   INTRODUCTORY ALLEGATIONS

     At times relevant to this Indictment:

1.   The "Tor network," often referred to as simply "Tor," was a network of computers on the Internet, distributed around the world, that was designed to conceal the true Internet Protocol ("IP") addresses of the computers accessing the network, and, thereby, the locations and identities of the network's users.  Web addresses on Tor could only be accessed through specific web browser software, including a major dark-web browser known as "Tor Browser," designed to access the Tor network.

2.   "Darknet markets," also called dark web marketplaces, refer to extensive, sophisticated, and widely used criminal marketplaces operating on the Tor network, which allow participants to buy and sell illegal items, such as drugs, firearms, and other hazardous materials with greater anonymity than is possible on the traditional Internet.  Buyers purchased illegal narcotics and contraband from darknet markets using digital currency, such as Bitcoin and Monero.

3.   ToRReZ, Dark0de, AlphaBay, World Market, Abacus, White House Market, Bohemia, Archetyp Market, ASAP Market, and Tor2Door, were, at various times, popular darknet markets widely used by individuals in the United States and elsewhere to buy and sell narcotics and other contraband.

4.   Vendors and buyers on ToRReZ, Dark0de, AlphaBay, World Market, Abacus, White House Market, Bohemia, Archetyp Market, ASAP Market, and Tor2Door markets operated under anonymous monikers. However, similar to traditional e-commerce websites that offer legitimate goods for sale, vendors on the darknet markets received ratings from buyers based on, among other things, the purported quality of the narcotics sold, reliability of delivery, and whether

the vendor was responsive to questions about the contraband being sold.

5. Vendors on darknet markets concealed their communications with buyers through an encryption system known as "Pretty Good Privacy", or simply PGP encryption. Secure communication using PGP encryption required the use of what is known as a "public key," which is a string of alphanumeric characters that enabled a user to receive encrypted messages from others.  Since public keys were associated with specific anonymous monikers, vendors on darknet marketplaces listed their public keys in listings for illegal narcotics and contraband so that buyers could communicate directly with the vendor.

6. It was common for drug vendors on darknet markets to sell counterfeit Oxycodone pills often referred to as "M30s", "Cartel M30s", and "blues", that would contain fentanyl or other synthetic opioids.  It was also common for drug vendors on darknet markets to sell counterfeit Adderall pills that would contain methamphetamine. Drug vendors often advertised such pills as "Pressed Adderall" and "Addy".

7. Quora was a social question-and-answer website based in Mountain View, California.  The Quora website had a search function that allowed users to research Quora's database for specific topics, post questions, and provide answers to other users' questions.  To do so, a Quora user was required to create an account that was linked to the user's email account.

B.    OBJECTS OF THE CONSPIRACY

Beginning on a date unknown to the Grand Jury and continuing until on or about November 2, 2022, in Los Angeles County, within the Central District of California, and elsewhere, defendant CHRISTOPHER HAMPTON, also known as ("aka") "Narco710," aka "Narco310," conspired with others known and unknown to the Grand Jury, to commit offenses against the United States, namely: (1) to knowingly and intentionally distribute, and possess with intent to distribute, at least 400 grams of a mixture and substance containing a detectable amount of fentanyl, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(vi); and (2) to knowingly and intentionally distribute, and possess with intent to distribute, at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(viii).

C.    MANNER AND MEANS OF THE CONSPIRACY

The objects of the conspiracy were to be accomplished, in substance, as follows:

1.    Defendant HAMPTON would create vendor profiles on darknet marketplaces, including ToRReZ, Dark0de, AlphaBay, World Market, Abacus, White House Market, Bohemia, Archetyp Market, ASAP Market, and Tor2Door markets, to sell fentanyl, methamphetamine, and other illegal drugs using the vendor names "Narco710" and "Narco310."

2.    Defendant HAMPTON would obtain and operate at least six pill pressing machines, including one or more machines that could produce up to 5,000 pills per hour, for the purpose of manufacturing

large quantities of pills containing fentanyl, methamphetamine, and other illegal drugs.

3. Defendant HAMPTON would maintain a clandestine drug lab located in the basement of an apartment complex to manufacture large quantities of pills containing fentanyl, methamphetamine, and other drugs in Inglewood, California (the "Inglewood Drug Lab").

4. Defendant HAMPTON would hire co-conspirators to operate the pill pressing machines inside the Inglewood Drug Lab, and to package and ship the narcotics that defendant HAMPTON sold on darknet marketplaces.

5. Defendant HAMPTON would provide instructions to co-conspirators about pressing fentanyl- and methamphetamine-laced pills, including directions about how to mix the narcotics with precursor chemicals.

6. Defendant HAMPTON would take photographs of illegal drugs, including fentanyl and methamphetamine, and use them to advertise drug sales on darknet markets.

7. Defendant HAMPTON and his co-conspirators would package drugs sold by defendant HAMPTON on darknet markets and then ship parcels containing the drugs to drug consumers.

8. Defendant HAMPTON would use the internet, including the Quora website, to research ways to further and conceal his illegal activity.

9. Defendant HAMPTON would reside at a home in Cerritos, California (the "Cerritos Stash House"), that defendant HAMPTON and his co-conspirators used to manufacture and package illegal drugs for shipment, and to post drug listings on defendant HAMPTON's vendor accounts.

10.   Defendant HAMPTON and his co-conspirators would possess firearms at the Cerritos Stash House to protect their drug trafficking business and the proceeds from drug sales of the conspirators.

11.   Through this conspiracy, defendant HAMPTON and his co-conspirators produced millions of pills containing illegal drugs, including fentanyl and methamphetamine, and sold drugs to thousands of drug buyers through defendant HAMPTON's darknet vendor accounts.

D.   OVERT ACTS

In furtherance of the conspiracy and to accomplish its objects, on or about the following dates, defendant HAMPTON, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

Overt Act No. 1:   On or about November 23, 2020, defendant HAMPTON sent text messages to an associate, stating "Do you know any programmers who can make a laptop untraceable[?]" and "I'll pay whatever".

Overt Act No. 2:   On or about December 16, 2020, in text messages with a drug buyer, defendant HAMPTON discussed the sale of illegal drugs, including four thousand "blue M30s".  In response to the drug buyer stating, "once I get the 4000 [M30s] I'll come back with 20k cash and spend it all with you … On addy; xans; everything", defendant HAMPTON instructed the drug purchaser to only communicate using an encrypted messaging application.

Overt Act No. 3:   On or about January 15, 2021, in text messages responding to a drug purchaser stating, "[w]hen can we get

4k more of those blue boys[?]", defendant HAMPTON responded, "any time".

Overt Act No. 4:   On or about January 15, 2021, in text messages to a co-conspirator about selling illegal drugs, defendant HAMPTON stated, "I'm setting up a dark web page tonight and we can put them on that too."

Overt Act No. 5:   On or about February 22, 2021, defendant HAMPTON purchased subscriptions for the "Anonymous TOR" and "OrNET Private Onion Browser" cellular phone applications.

Overt Act No. 6:   On or about March 9, 2021, defendant HAMPTON purchased pill press molds from an online vendor for the purpose of manufacturing fentanyl- and methamphetamine-laced pills.

Overt Act No. 7:   On or before June 6, 2021, defendant HAMPTON used the Quora website to research the following or a substantially similar topic: "How do you start your own market on the dark web?"

Overt Act No. 8:   On or before August 22, 2021, defendant HAMPTON used the Quora website to research the following or a substantially similar topic: "What is a typical shift like for a big city cop, for example an officer in the LAPD?"

Overt Act No. 9:   On or about September 7, 2021, defendant HAMPTON recorded a video describing the manufacturing process for counterfeit "M30" pills, in which defendant HAMPTON holds a large bag containing blue powder and states, "I got the powder for the blues today, too.  You use one-tenth of this, so if you're doing ten grams, you do ten grams of the other stuff and one gram of [this]."

Overt Act No. 10:   On October 3, 2021, defendant HAMPTON sent an email about replacement parts for his TDP-5 tablet pressing

machine, attached a photograph of a pill press covered in orange powder, and asked: "will these parts fit this model of tdp5[?]"

Overt Act No. 11:   On or about November 3, 2021, defendant HAMPTON created a vendor account using the moniker "Narco310" on the ToRReZ market.

Overt Act No. 12:   On or about November 24, 2021, defendant HAMPTON placed an order with an online vendor to purchase pill press molds, including a mold to manufacture counterfeit Adderall pills.

Overt Act No. 13:   On or about December 6, 2021, defendant HAMPTON logged into his drug vendor account on the ToRReZ market to check the status of 77 pending drug orders, including orders for methamphetamine and fentanyl.

Overt Act No. 14:   On December 11, 2021, in text messages to a co-conspirator who assisted defendant HAMPTON manufacture and ship narcotics ("Co-Conspirator 1"), defendant HAMPTON wrote, "Do you want a full-time job starting at 5k monthly ... It's simple" and described the work as "Pkg and dropping letters off at blue box usps Don't even go inside."

Overt Act No. 15:   On or about December 28, 2021, defendant HAMPTON logged into the Narco710 vendor account on Dark0de Market to check the status of pending drug orders.

Overt Act No. 16:   On or before January 6, 2022, defendant HAMPTON used the Quora website to research the following or a substantially similar topic: "How can I build a website and customize it on the Dark Web?"

Overt Act No. 17:   On or about January 6, 2022, defendant HAMPTON logged into the Narco710 vendor account on Dark0de Market and World Market to check the status of pending drug transactions.

Overt Act No. 18:   On or about January 20, 2022, in text messages, defendant HAMPTON instructed Co-Conspirator 1 to meet him at "404 Warren Lane", nearby the Inglewood Drug Lab.

Overt Act No. 19:   On or about January 23, 2022, defendant HAMPTON sent the following text message to a co-conspirator: "Want to stop and get some rubber gloves[?] I'll pay you."

Overt Act No. 20:   On or about January 30, 2022, in text messages, defendant HAMPTON told Co-Conspirator 1,  "[w]e have to be smart and careful" and "are only getting bigger by the day", so defendant HAMPTON instructed that the co-conspirators "[n]eed to act like we always being watched".

Overt Act No. 21:   On or about February 3, 2022, defendant HAMPTON logged into the Narco710 vendor account on Dark0de Market to read reviews from drug buyers, including a buyer review that stated, "this vendor is the GOAT of the dark web".

Overt Act No. 22:   On or about February 5, 2022, defendant HAMPTON sent an email to "Narco310@protonmail.com" and attached a photograph depicting counterfeit M30 pills, which defendant HAMPTON and his co-conspirators later used to advertise the sale of "cartel m30s" on one or more darknet marketplaces.

Overt Act No. 23:   On or about February 7, 2022, defendant HAMPTON sold "50 cartel m30s" on the Dark0de marketplace and subsequently distributed approximately 5 grams of a mixture and substance containing fentanyl to a person whom defendant HAMPTON believed was a drug buyer, but who was actually an undercover employee of the Federal Bureau of Investigation ("FBI").

Overt Act No. 24:   On or about February 8, 2022, defendant HAMPTON logged into the Narco710 vendor account on Dark0de Market and

to check the amount of money he had made from drug sales on the marketplace, which, at that time, totaled approximately $386,748 worth of illegal drugs on Dark0de Market.

Overt Act No. 25:   On or about February 10, 2022, defendant HAMPTON logged into the Narco710 vendor account on Dark0de Market and to check the amount of money he had made from drug sales on the marketplace, which, at that time, totaled approximately $404,458 worth of illegal drugs on Dark0de Market.

Overt Act No. 26:   On or about February 18, 2022, defendant HAMPTON logged into the Narco710 vendor account on Dark0de Market and to check the amount of money he had made from drug sales on the marketplace, which, at that time, totaled approximately $487,743 worth of illegal drugs on Dark0de Market.

Overt Act No. 27:   On or about February 28, 2022, defendant HAMPTON used the Quora website to research the following or a substantially similar topic: "How do you start your own market on the dark web?"

Overt Act No. 28:   On or about March 7, 2022, in text messages with Co-Conspirator 1, defendant HAMPTON coordinated meeting Co-Conspirator 1 to press counterfeit pills, stating: "I've been here" and "Machine [has] been running."

Overt Act No. 29:   On or about March 9, 2022, defendant HAMPTON sold "3.5 grams Synthetic China 260$$" on World Market and subsequently distributed approximately 3.51 grams of a mixture and substance containing fentanyl to a person defendant HAMPTON believed was a drug buyer, but who was actually an undercover employee of the FBI.

1    <u>Overt Act No. 30:</u>   On or about March 13, 2022, in text

2  messages, defendant HAMPTON told Co-Conspirator 1, "I need u here by

3  10 on weekdays" and "Machines on".

4    <u>Overt Act No. 31:</u>   On or before March 25, 2022, defendant

5  HAMPTON used the Quora website to research the following or a

6  substantially similar topic: "If I was being hunted by the US

7  Marshals, the FBI, the DEA and the ATF, how could I keep from getting

8  caught?"

9    <u>Overt Act No. 32:</u>   On or about April 8, 2022, defendant HAMPTON

10  sent an email to SALE@tdpmolds.com stating, "If I buy tdp 5 [tablet

11  pressing machine] [c]an you have it shipped to Los Angeles today[?]".

12    <u>Overt Act No. 33:</u>   On or about April 9, 2022, defendant HAMPTON

13  sent an email to "Narco310@protonmail.com" and attached a photograph

14  depicting a large quantity of methamphetamine next to sign stating

15  "4-8-22 Narco710", which defendant HAMPTON and his co-conspirators

16  later used to advertise the sale of "CARTEL CRYSTAL METH" on various

17  darknet marketplaces.

18    <u>Overt Act No. 34:</u>   On or about April 10, 2022, in text messages

19  with a co-conspirator, defendant HAMPTON discussed a broken pill

20  press machine, stating "I can have a new one here Wednesday" and "I

21  have enough to make 700k pills."

22    <u>Overt Act No. 35:</u>   On or before April 15, 2022, defendant

23  HAMPTON used the Quora website to research the following or a

24  substantially similar topic: "Why doesn't the CIA find criminals on

25  the dark web website?"

26    <u>Overt Act No. 36:</u>   On or about April 21, 2022, defendant

27  HAMPTON sold "100 Pressed Adderall 30mg AD30" on ASAP market and

28  subsequently distributed approximately 53.1 grams of a mixture and

substance containing a detectable amount of methamphetamine to a person defendant HAMPTON believed was a drug buyer, but who was actually an undercover employee of the FBI.

Overt Act No. 37:   On or about April 23, 2022, defendant HAMPTON sent text messages to an associate seeking "business card[s]" for the purpose of advertising his drug business, stating he wanted the cards to be "Simple. Just the name NARCO710 STORE".

Overt Act No. 38:   On or about May 3, 2022, defendant HAMPTON sold "4oz Cartel Crystal Meth" on ASAP market and subsequently distributed approximately 102 grams of pure methamphetamine to a person defendant HAMPTON believed was a drug buyer, but who was actually an undercover employee of the FBI.

Overt Act No. 39:   On or before May 4, 2022, defendant HAMPTON used the Quora website to research the following or a substantially similar topic: "If USPS says the package was seized by law enforcement, what should I do?"

Overt Act No. 40:   On or before May 7, 2022, defendant HAMPTON used the Quora website to research the following or a substantially similar topic: "Can the FBI look at your internet history?"

Overt Act No. 41:   On or before May 10, 2022, defendant HAMPTON used the Quora website to research the following or a substantially similar topic: "Can FBI or CIA track your messages from your phone?"

Overt Act No. 42:   On or about May 12, 2022, defendant HAMPTON sent a text message to a co-conspirator who assisted defendant HAMPTON manufacture narcotics ("Co-Conspirator 2"), instructing the co-conspirator to use the following mixture when pressing pills: "Mix is 5350 orange 150 ingredient."

Overt Act No. 43:   On or about May 17, 2022, in text messages, defendant HAMPTON asked a co-conspirator, "Yo you free I got machine stuck" and "I got gloves."

Overt Act No. 44:   On or before May 21, 2022, defendant HAMPTON used the Quora website to research the following or a substantially similar topic: "What are the telltale signs of an undercover FBI agent?"

Overt Act No. 45:   On or about October 26, 2022, defendant HAMPTON used a fraudulent driver's license containing personal identifying information belonging to S.S. to lease the Cerritos Stash House.

Overt Act No. 46:   On or about November 2, 2022, defendant HAMPTON created a listing to sell fentanyl pills using the Narco710 vendor account on Bohemia market, listing the following in the description section of the listing: "50 PERFECTLY PRESSED M30S SKITTLES THE HYPE IS REAL" and "#MBOX #M30 #BLUE #SKITTLEZ".

Overt Act No. 47:   On or about November 2, 2022, inside the Inglewood Drug Lab, defendant HAMPTON and his co-conspirators possessed five pill pressing machines, hundreds of pounds of precursor materials, and approximately 48.06 kilograms of a mixture and substance containing methamphetamine.

Overt Act No. 48:   On or about November 2, 2022, inside the Cerritos Stash House, defendant HAMPTON possessed with intent to distribute approximately 11.10 kilograms of a mixture and substance containing fentanyl, and at least approximately 37.75 kilograms of a mixture and substance containing methamphetamine.

1        <u>Overt Act No. 49:</u>   On or about November 2, 2022, inside the

2    Cerritos Stash House, defendant HAMPTON and his co-conspirators

3    possessed firearms to protect their illegal drugs and drug proceeds.

COUNT TWO

[21 U.S.C. §§ 841(a)(1), (b)(1)(C); 18 U.S.C. § 2(b)]

On or about February 8, 2022, in Los Angeles County, within the Central District of California, defendant CHRISTOPHER HAMPTON, also known as ("aka") "Narco710," aka "Narco310," knowingly and intentionally distributed, and willfully caused to be distributed, N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

COUNT THREE

[21 U.S.C. §§ 841(a)(1), (b)(1)(C); 18 U.S.C. § 2(b)]

On or about March 12, 2022, in Los Angeles County, within the Central District of California, defendant CHRISTOPHER HAMPTON, also known as ("aka") "Narco710," aka "Narco310," knowingly and intentionally distributed, and willfully caused to be distributed, N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

COUNT FOUR

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii); 18 U.S.C. § 2(b)]

On or about April 25, 2022, in Los Angeles County, within the Central District of California, defendant CHRISTOPHER HAMPTON, also known as ("aka") "Narco710," aka "Narco310," knowingly and intentionally distributed, and willfully caused to be distributed, at least 50 grams, that is, approximately 53.1 grams, of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance.

COUNT FIVE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii); 18 U.S.C. § 2(b)]

On or about May 6, 2022, in Los Angeles County, within the Central District of California, defendant CHRISTOPHER HAMPTON, also known as ("aka") "Narco710," aka "Narco310," knowingly and intentionally distributed, and willfully caused to be distributed, at least 50 grams, that is, approximately 109 grams, of methamphetamine, a Schedule II controlled substance.

COUNT SIX

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

On or about November 2, 2022, at the Inglewood Drug Lab, in Los Angeles County, within the Central District of California, defendant CHRISTOPHER HAMPTON, also known as ("aka") "Narco710," aka "Narco310," knowingly and intentionally possessed with intent to distribute at least 500 grams, that is, approximately 48.06 kilograms, of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance.

COUNT SEVEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

On or about November 2, 2022, at the Cerritos Stash House, in Los Angeles County, within the Central District of California, defendant CHRISTOPHER HAMPTON, also known as ("aka") "Narco710," aka "Narco310," knowingly and intentionally possessed with intent to distribute at least 500 grams, that is, approximately 37.75 kilograms, of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance.

COUNT EIGHT

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vi)]

On or about November 2, 2022, at the Cerritos Stash House, in Los Angeles County, within the Central District of California, defendant CHRISTOPHER HAMPTON, also known as ("aka") "Narco710," aka "Narco310," knowingly and intentionally possessed with intent to distribute at least 400 grams, that is, approximately 11.10 kilograms, of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

COUNT NINE

[21 U.S.C. § 856(a)(1); 18 U.S.C. § 2(a)]

Beginning on a date unknown, but not later than in or around December 2021, and continuing to November 2, 2022, in Los Angeles County, within the Central District of California, defendant CHRISTOPHER HAMPTON, also known as ("aka") "Narco710," aka "Narco310," and others known and unknown to the Grand Jury, each aiding and abetting the other, knowingly opened, leased, rented, used, and maintained a place, that is, the Inglewood Drug Lab located at 423 Warren Lane, in Inglewood, California, for the purpose of manufacturing and distributing controlled substances, namely, N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance, and methamphetamine, Schedule II controlled substance.

1

COUNT TEN

2

[21 U.S.C. § 856(a)(1); 18 U.S.C. § 2(a)]

3       Beginning on or about October 26, 2022, and continuing to

4   November 2, 2022, in Los Angeles County, within the Central District

5   of California, defendant CHRISTOPHER HAMPTON, also known as ("aka")

6   "Narco710," aka "Narco310," and others known and unknown to the Grand

7   Jury, each aiding and abetting the other, knowingly opened, leased,

8   rented, used, and maintained a place, that is, the Cerritos Stash

9   House located at 12361 Palm Street, in Cerritos, California, for the

10  purpose of distributing controlled substances, namely, N-phenyl-N-[1-

11  (2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule

12  II narcotic drug controlled substance, and methamphetamine, Schedule

13  II controlled substance.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT ELEVEN

[18 U.S.C. § 924(c)(1)(A)(i)]

On or about November 2, 2022, in Los Angeles County, within the Central District of California, defendant CHRISTOPHER HAMPTON, also known as ("aka") "Narco710," aka "Narco310," knowingly possessed firearms, namely, a ghost gun with an OHHLION sight and BLITZKRIEG components, including a BLITZKRIEG barrel marked as 5.56x45 NATO caliber, a Ruger, Model 5.7, 5.7x28mm caliber semiautomatic handgun, bearing serial number 641-47328, a CZ, Model Scorpion EVO 3 S1, 9x19 caliber semiautomatic handgun, bearing serial number G006151, and a Zastava, Model Z PAP M70, 7.62x39mm caliber semiautomatic rifle, bearing serial number Z70-128012, in furtherance of drug trafficking crimes, namely, the following: conspiracy to distribute and possess with intent to distribute fentanyl and methamphetamine, in violation of Title 21, United States Code, Section 846, as charged in Count One of this Indictment; possession with intent to distribute methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(viii), as charged in Count Seven of this Indictment; possession with intent to distribute fentanyl, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(vi), as charged in Count Eight of this Indictment; and maintaining a drug involved premises, in violation of Title 21, United States Code, Section 856(a)(1), as charged in Count Ten of this Indictment.

1          FORFEITURE ALLEGATION ONE

2    [21 U.S.C. § 853; 18 U.S.C. § 924; 28 U.S.C. § 2461(c)]

3    1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal

4    Procedure, notice is hereby given that the United States of America

5    will seek forfeiture as part of any sentence, pursuant to Title 21,

6    United States Code, Section 853, Title 18, United States Code,

7    Section 924, and Title 28, United States Code, Section 2461(c), in

8    the event of the defendant's conviction of the offenses set forth in

9    any of Counts One through Ten of this Indictment.

10   2.    The defendant, if so convicted, shall forfeit to the United

11   States of America the following:

12          (a)   All right, title and interest in any and all property,

13   real or personal, constituting or derived from, any proceeds which

14   the defendant obtained, directly or indirectly, from any such

15   offense;

16          (b)   All right, title and interest in any and all property,

17   real or personal, used, or intended to be used, in any manner or

18   part, to commit, or to facilitate the commission of any such offense;

19          (c)   All right, title, and interest in any firearm or

20   ammunition involved in or used in any such offense; and

21          (d)   To the extent such property is not available for

22   forfeiture, a sum of money equal to the total value of the property

23   described in subparagraphs (a), (b), and (c).

24   3.    Pursuant to Title 21, United States Code, Section 853(p),

25   and as incorporated by Title 28, United States Code, Section 2461(c),

26   the defendant, if so convicted, shall forfeit substitute property if,

27   by any act or omission of the defendant, the property described in

28   the preceding paragraph, or any portion thereof: (a) cannot be

located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

1          FORFEITURE ALLEGATION TWO

2        [18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c)]

3        8.    Pursuant to Rule 32.2 of the Federal Rules of Criminal

4   Procedure, notice is hereby given that the United States of America

5   will seek forfeiture as part of any sentence, pursuant to Title 18,

6   United States Code, Section 924(d)(1), and Title 28, United States

7   Code, Section 2461(c), in the event of the defendant's conviction of

8   the offense set forth in Count Eleven of this Indictment.

9        9.    The defendant, if so convicted, shall forfeit to the United

10  States of America the following:

11        (a)   All right, title, and interest in any firearm or

12  ammunition involved in or used in such offense;

13        (b)   To the extent such property is not available for

14  forfeiture, a sum of money equal to the total value of the property

15  described in subparagraph (a).

16        3.    Pursuant to Title 21, United States Code, Section 853(p),

17  as incorporated by Title 28, United States Code, Section 2461(c), the

18  defendant, if so convicted, shall forfeit substitute property, up to

19  the value of the property described in the preceding paragraph if, as

20  the result of any act or omission of the defendant, the property

21  described in the preceding paragraph or any portion thereof (a)

22  cannot be located upon the exercise of due diligence; (b) has been

23  transferred, sold to, or deposited with a third party; (c) has been

24  placed beyond the jurisdiction of the court; (d) has been

25  //

26  //

27  //

28

1  substantially diminished in value; or (e) has been commingled with

2  other property that cannot be divided without difficulty.

3

4

5

6                                                    A TRUE BILL

7

8                                           _____/S/_____

9                                                    Foreperson

10  E. MARTIN ESTRADA
    United States Attorney

11

12

13  SCOTT M. GARRINGER
    Assistant United States Attorney
14  Chief, Criminal Division

15  CHRISTOPHER C. KENDALL
    Assistant United States Attorney
16  Acting Chief, International
    Narcotics, Money Laundering, and
17  Racketeering Section

18  IAN V. YANNIELLO
    Assistant United States Attorney
19  Deputy Chief, General Crimes
    Section

20  JAMES A. SANTIAGO
    Assistant United States Attorney
21  International Narcotics, Money
    Laundering, and Racketeering
22  Section

23

24

25

26

27

28